UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH CESTARO,<br><br>Plaintiff,<br><br>-v-<br><br>MICHAEL PROHASKA and CONSTRUCTION AND GENERAL BUILDING LABORERS LOCAL 79,<br><br>Defendants. | 22-cv-9444 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

Joseph Cestaro, both a member and former employee of Construction and General Building Laborers Local 79 ("Local 79"), sues Local 79 and its business secretary Michael Prohaska. See generally First Amended Complaint ("FAC"), Dkt. 24. Specifically, Cestaro alleges that after he sought to challenge Prohaska in a union election, Prohaska and the Union retaliated against him by firing him and falsely claiming at a meeting of union membership that Cestaro ignored 1,500 voicemails left for him by union membership relating to his job duties with the union. FAC ¶¶ 1-10.

Cestaro initially sued in New York State court, alleging 10 counts against Prohaska and Local 79; defendants removed the case to this court in November 2022. Notice of Removal, Dkt. 1. Cestaro moved to remand, Dkt. 11, and defendants moved to dismiss Cestaro's complaint in its entirety, arguing that many of Cestaro's breach-of-contract and other claims against Local 79 are preempted by the Labor Management

Relations Act ("LMRA"), that other claims are barred under a New York doctrine prohibiting suits against unincorporated associations such as Local 79 unless the participation of each member is pleaded, that certain claims fail under New York's employment-at-will doctrine, that Cestaro failed to adequately allege other claims, and that the defamation claim against Prohaska is time-barred. See Defs. Mem. Supp. Motion to Dismiss ("Defs. Mem."), Dkt. 9.

During oral argument, the Court denied Cestaro's motion to remand, finding that many of Cestaro's claims required interpreting Local 79's union constitution and therefore arose under and were completely preempted by the LMRA and that the Court had supplemental jurisdiction over Cestaro's remaining claims. It formalized that ruling in an order issued later that day. See Order dated 12/22/22, Dkt. 21. Later, it also granted in part and denied in part defendants' motion to dismiss by bottom-line order. See 1/10/23 Order, Dkt. 25. Specifically, it dismissed several counts as preempted by the LMRA (although dismissal was without prejudice to Cestaro's repleading such claims under the LMRA if he could),[1] and it also dismissed Cestaro's fraud, negligent misrepresentation, and prima facie tort claims (Counts III, IV, and VIII) for failure to state a claim. Id. However, it denied defendants' motion to dismiss with respect to Cestaro's defamation and defamation

[1] These included breach of contract, breach of fiduciary duties, tortious interference with contract and with business relations, and wrongful termination.

per se claims (Counts I and II). Id. at 1-2. This Memorandum Order explains the reasons for that order.

## I. The LMRA Preempts Those Claims Turning on the Local 79 Constitution (Counts V, VI, VII, IX, and X).

Section 301(a) of the LMRA provides that: "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between such labor organizations[] may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The Supreme Court has previously held both that individual union members may sue under this provision and that its reference to "contracts . . . between such labor organizations" extends to claims alleging a violation of a union's contract with its local affiliates -- often styled as the union's "constitution" -- such as the Local 79 Constitution at issue here. See Wooddell v. Int'l Broth. of Elec. Workers, Local 71, 502 U.S. 93, 101 (1991) ("Likewise, union constitutions are an important form of contract between labor organizations. Members of a collective-bargaining unit are often the beneficiaries of such interunion contracts, and when they are, they likewise may bring suit on these contracts under § 301."). The provision also "governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Caterpillar Inc. v. Williams, 482 U.S. 386,

394 (1987). Therefore, "when resolution of a state law claim is 'substantially dependent' upon or 'inextricably intertwined' with analysis of the terms of [an agreement between a union and employer or among unions], the state law claim 'must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." Whitehurst v. 1199 SEIU United Healthcare Workers East, 928 F.3d 201, 206 (2d Cir. 2019).

The question here is therefore which, if any, of Cestaro's claims -- although all pleaded under state law -- in fact turns on an analysis of the Local 79 Constitution. Most obviously, Cestaro's breach-of-contract and wrongful termination claims against Local 79 -- which quite literally turn on Local 79's allegedly "not provid[ing] Mr. Cestaro with the required due process protections afforded by Article XI Sections 1 and 4 of the Local 79 Constitution" -- necessarily depend on alleged violations of the Local 79 constitution and require interpreting that constitution's due process provisions in order to decide the claims' merits. FAC ¶¶ 190, 200. As such, Cestaro's Ninth and Tenth causes of action (for breach of contract and wrongful termination) are plainly preempted by the LMRA.

Only slightly less obviously, Cestaro's claim against Prohaska for breach of fiduciary duties relies on duties allegedly owed by Prohaska to union members and employees pursuant to the union's constitution, FAC ¶ 128, as well as Prohaska's allegedly violating those duties "by improperly using his position and authority to retaliate against Mr. Cestaro by terminating his employment in

violation of the Local 79 Constitution." Id. ¶ 131. So too Cestaro's claims against Prohaska for tortious interference with contract and tortious interference with business relations plainly depend on construing the union constitution's due process provisions and determining whether they apply to protect a union employee, such as Cestaro, with respect to his employment with the union. Id. ¶ 140-44 (alleging that Prohaska knowingly induced the Local 79 to violate Cestaro's due process rights under the union constitution); id. ¶ 149 (alleging this violation constituted a breach of contract by Local 79); id. ¶¶ 151-56 (alleging additional violations by Prohaska of duties supposedly owed under the Local 79 constitution); id. ¶¶ 162-175 (similar). Because these claims (Counts V, VI, and VII) all involve alleged violations of duties assertedly created by the Local 79 Constitution -- and their resolution therefore requires interpreting that Constitution -- the Court concludes they are likewise preempted by the LMRA. See Whitehurst, 928 F.3d at 207 (determining that a state discrimination claim was preempted by the LMRA where "[t]he basis for [the] discrimination claim" was alleged discrimination during a post-termination grievance process and plaintiff's right to participate in that grievance process depended on interpreting the union collective bargaining agreement); Anderson v. Aset Corp., 416 F.3d 170, 171-72 (2d Cir. 2005) (affirming dismissal of tortious interference claims where their resolution involved interpreting collective bargaining agreements).

As described above, Cestaro's breach of contract, wrongful termination, breach of fiduciary duties, and tortious interference claims all depend on interpreting the scope of duties and protections Cestaro alleges were created by the Local 79 Constitution. Although Cestaro cites correspondence between him and Local 79's lawyers in which Local 79 took the position that the Local 79 Constitution does not create due process with respect to employment with the union, such correspondence merely reinforces that the resolution of Cestaro's claims depends on interpreting whether the Constitution's due process protections and other provisions apply to Cestaro in his capacity as a union employee as well as member. Whitehurst, 928 F.3d at 207. As such, Counts V, VI, VII, IX, and X are each preempted by the LMRA.[2]

**II. Cestaro's fails to state claims for fraud, negligent misrepresentation, and prima facie tort.**

Cestaro also alleges claims for fraud, negligent misrepresentation, and prima facie tort against Prohaska. FAC ¶¶ 103-25, 177-84. The gravamen of the fraud and negligent misrepresentation claims is that Prohaska, either knowingly or negligently, made the allegedly false statement to union membership that Cestaro failed to listen and respond to 1,500 voicemails left him by union members and this statement caused Cestaro various forms of injury. Id. ¶¶ 103-25. These allegations plainly sound in defamation, not fraud or negligent

[2] This Court has made amply clear that, if he is able to do so, Cestaro may seek to replead his preempted claims as Section 301 claims. See Dkt. 25. He has not sought to do so.

misrepresentation, because the person allegedly injured by the false statement was not the person to whom the statement was made and whose reliance was allegedly induced, but rather the person the statement was about. As defendants point out, Cestaro thus fails to allege that he (as opposed to the union membership) actually relied on any false statement by Prohaska, even though reliance is a necessary element of both fraud and negligent misrepresentation claims. See Loreley Financing (Jersey) No.3 Ltd. v. Wells Fargo Secs., LLC, 13 F.4th 247, 259-60 (2d Cir. 2021) (fraud requires reliance "on the part of the plaintiff"); Pasternack v. Laboratory Corp. of Am. Holdings, 27 N.Y.3d 817, 826 (2016) ("[T]hird-party reliance does not satisfy the reliance element of a fraud claim"); Ford v. Sivilli, 2 A.D.3d 773, 774 (N.Y. App. Div. 2003) (making clear that negligent misrepresentation, like fraud, includes as an element the reliance of the person to whom a false or misleading statement is made). As such, the Court easily concludes that Cestaro's fraud and negligent misrepresentation claims (Counts III and IV) should be dismissed for failure to state a claim.

Count VIII of Cestaro's complaint also alleges prima facie tort. FAC ¶¶ 177-84. This claim, like many of Cestaro's other claims, also turns on Prohaska's allegedly falsely informing union membership that Cestaro had failed to listen to 1,500 voicemails so as to retaliate against Cestaro for planning to challenge him in union elections, resulting in Cestaro's termination as well as reputational damage. Id. Essentially, Cestaro tacks on this prima facie tort claim -- a "highly disfavored" cause of action under New York law, Nevin v. Citibank, 107

F. Supp. 2d 333, 347 (S.D.N.Y. 2000) -- as a fallback reiteration of his other theories of liability. But New York courts are clear that "[p]rima facie tort should not become a 'catch-all' alternative for every cause of action which cannot stand on its legs." Gertler v. Goodgold, 107 A.D.2d 481, 490 (App. Div. 1985). Where, as here, the basis for a prima facie tort claim is "precisely the same" as the "substantive acts" underlying the plaintiff's other "causes of action," there can be no prima facie tort claim. Id. As such, the Court also dismisses Count VIII for failure to state a claim.

**III. Cestaro successfully makes out defamation and defamation per se claims.**

This leaves Cestaro's first two counts, which relate most clearly to the facts he alleges: claims for defamation and defamation per se based on Prohaska's allegedly telling union members that Cestaro failed to listen to 1,500 voicemails left him by union membership, when in fact this was not true. Prohaska makes two arguments as to why these claims should be dismissed. *First*, Prohaska argues that because these claims involve Prohaska's taking actions in his capacity as a union official, they should be dismissed under New York's Martin v. Curran doctrine, which bars tort suits against voluntary unincorporated associations such as Local 79 unless the tortious actions of each member of the association is pled. Palladino v. CNY Centro, Inc., 12 N.E. 436, 438 (N.Y. 2014) (quoting Martin v. Curran, 101 N.E.2d 683, 685 (N.Y. 1958)). *Second*, Prohaska argues that Cestaro's claims are time-barred. The Court takes each argument in turn.

A. Cestaro's claims against Prohaska are not barred under Martin v. Curran

In 1958, the New York Court of Appeals reasoned that because "voluntary unincorporated association[s]" such as unincorporated unions are "neither a partnership nor a corporation . . . not [] artificial person[s], and ha[ve] no existence independent of [their] members," such entities cannot be sued for torts unless "the individual liability of every single member can be alleged and proven." Palladino, 12 N.E.3d at 438 (quoting Martin, 101 N.E.2d at 685). That decision was reaffirmed as recently as 2014. Id.[3]

The Martin doctrine would plainly preclude any of Cestaro's tort claim as alleged against Local 79. But Cestaro alleges his defamation and defamation per se claims against Prohaska, not against Local 79. Prohaska nonetheless argues that because he made the allegedly defamatory statements here at issue while he was conducting union business -- during a union meeting, when Prohaska explained to union membership why he chose to fire Cestaro, FAC ¶¶ 69-80 -- Cestaro's claims should be understood as claims against Prohaska in his official capacity barred by Martin. Defs. Mem. 7-8; Defs. Reply Supp. Motion to Dismiss at 8-9, Dkt. 19.

[3] There is a narrow exception from Martin for claims that a union member was wrongfully expelled from a union -- largely based on the theory that because expulsion is based on a vote of the membership, expulsion demonstrates the complicity of all the union's members. Id. Cestaro does not argue that exception is implicated here.

It is true that New York's First and Third Appellate Divisions have extended Martin in this way, reasoning that where a complaint alleges claims against a union representative relating to her official duties and the claim would be barred if alleged against the union itself by Martin, then Martin also bars the assertion of the claim against the union representative. Duane Reade, Inc. v. Loc. 338 Retail, Wholesale, Dep't Store Union, UFCW, AFL-CIO, 17 A.D.3d 277, 278 (N.Y. App. 2005); Lahendro v. New York State Teachers Ass'n, 88 A.D.3d 1146, 1147 (N.Y. App. 2011). However, neither case analyzed the issue in any depth, or explained why Martin acts to bar claims against an individual union official that would be barred if alleged against the union itself.

By contrast, Martin itself indicates that it should not be understood to bar suits against union officials as individuals. In Martin -- also a defamation case -- the New York Court of Appeals held that the plaintiff could not proceed against either the union or "the president or treasurer in their representative capacities." Martin, 101 N.E.2d at 276. However, the case was "allowed to stand as against those same defendants, individually." Id. at 279. And that result is not surprising, as nothing about Martin's logic -- which largely depended on the lack of any separate corporate life of an unincorporated association outside the persons and actions of each of its members, id. at 280-83 -- would suggest that an official of such an unincorporated association may escape personal liability for her

own tortious actions just because they bear some relationship to her activities with the association.

For this reason, the Second Appellate Division held in 2015 that Martin does not preclude a defamation claim from being brought against a union official defendant in their individual capacity. Cablevision Sys. Corp. v. Comms. Worker, 131 A.D.3d 1082, 1083-84 (N.Y. App. Div. 2015). And it appears to this Court that this is how the New York Court of Appeals would also rule.

It is true, of course, that Cestaro's allegations concern actions Prohaska allegedly took while carrying out union business. FAC ¶¶ 69-80. As such, Prohaska argues that Cestaro's claims are against him in his "official capacity," Defs. Reply at 8, and Martin plainly bars suits against union officials in their official or "representative capacity." But what Martin means by "representative capacity" is a situation where an individual is named to represent the association, such that the liability asserted is still that of the association's. Martin, 101 N.E.2d at 280-81 (explaining that while a suit may be brought against an unincorporated association's president or treasurer as a representative of the association without the need of naming each individual member, such a suit is still against the organization). This understanding is consistent with the standard distinction between "official capacity" and "individual capacity" suits, which does not have to do with whether the named official's actions relate to their official duties, but rather with whether the plaintiff is seeking a judgment against the entity for which an official acts or against the

official as an individual. See Ying Jing Gan v. New York, 996 F.3d 522, 529 (2d Cir. 1993) (explaining that official capacity suits seek relief against the state, while individual capacity suits seek relief against the individual).

Cestaro's suit against Prohaska -- while it plainly concerns actions Prohaska took while conducting union business -- is brought against Prohaska individually. The fact that Prohaska was acting in his capacity as a union official might mean that, but for Martin, Cestaro could have brought his defamation claim directly against Local 79. Cf. Vostis v. ADP, LLC, 187 A.D.3d 1490, 1491 (N.Y. App. Div. 2020) ("An employer may be held liable under a theory of respondeat superior for the intentional torts of its employees when done within the scope of employment."). But Prohaska has failed to cite binding authority demonstrating that he is immune personally for liability from intentional torts just because he was conducting union business, and neither the logic nor holding of Martin support that proposition. Thus, to repeat, the Court believes the New York Court of Appeals would not interpret Martin to bar Cestaro's claims against Prohaska individually.

B. Cestaro's claims are not time-barred

Prohaska also argues that Cestaro's defamation claims are time-barred under New York's one-year statute of limitations for such claims. See N.Y. C.P.L.R. § 215(3) (requiring libel or slander actions to be brought within one year). Prohaska's allegedly defamatory statements were made at a March 17, 2021 union meeting, Compl. ¶ 69,

and Cestaro brought this action in October 11 2022 -- over a year after the March 2021 meeting.

However, as Cestaro alleges in his complaint, Cestaro initially raised identical defamation allegations as counterclaims in an earlier New York state case. Compl. ¶¶ 17-21. Those claims were dismissed, not on the merits, but because they did not relate to the claims filed against Cestaro in that action. Id. Cestaro therefore argues that he is entitled to the benefit of N.Y. CPLR § 205(a), which allows a plaintiff who brought a timely action that is dismissed without a final judgment on the merits to "commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period." Id.

Prohaska makes two arguments as to why § 205(a) does not save Cestaro's defamation claims: first, that § 205(a) does not apply because Cestaro was not a 'plaintiff' in the prior action and because that action has not yet been "terminat[ed]", and second, that even assuming it does apply, Cestaro is still too late. The Court takes each argument in turn.

Prohaska cites no authority demonstrating that § 205(a) should not apply just because Cestaro was not the original 'plaintiff' in the prior action. As to the counterclaims Cestaro asserted in that action -- the ones he now asserts here -- Cestaro was very much the

"plaintiff," in that he was affirmatively bringing those claims. Cf. CPLRA § 1002(a) (describing as "plaintiffs" any "persons who assert any right to relief jointly, severally, or in the alternative arising out of the same transaction, occurrence, or series of transactions or occurrences . . . [and who] join in one action as plaintiffs if any common question of law or fact would arise."). Further, the Court rejects the argument that Cestaro may not bring these claims now under § 205(a) even though the prior action has not been terminated. Cestaro's claims -- which could have been the basis of their own suit -- were terminated, and it would make no sense to interpret § 205(a) to mean that Cestaro's claims are not timely today but will become so at some future date when a wholly separate action that no longer concerns these claims concludes.

As such, the Court concludes that § 205(a) applies. However, Prohaska contends that, even if § 205(a) applies, Cestaro is still too late, because while he brought this action on October 11, 2022, within six months of being served notice of entry of the order dismissing his claims on April 12, 2022, the dismissal order itself was entered on April 5, 2022. As such, Prohaska argues that Cestaro's complaint in this action was filed just outside the six-month window dismissing his claims. Prohaska cites in this regard a statement by New York's Fourth Appellate department in U.S. Bank Nat'l Ass'n v. Farrell, 200 A.D.3d 1707, 1708 (4th Dept. 2021), in which that court stated: "[g]enerally, the six-month period starts running on the date of entry of the order

dismissing the prior action, not when the order is served with notice of entry." Id. at 1708.

However, other New York courts have held that the date on which a prior action should be considered "terminated for CPLR § 205(a) purposes [is] 30 days after the entry of the [dismissal order] . . . when plaintiff's right to appeal expired." Wells Fargo Bank, N.A. v. Portu, 179 A.D. 3d 1204, 1206 (N.Y. App. Div. 2020); Specialized Loan Servicing Inc. v. Nimec, 183 A.D.3d 962, 964 (N.Y. App. Div. 2020 ("For CPLRA 205(a) purposes, an action from which no appeal has been taken is considered terminated *30 days after* entry of a court's order of dismissal, as this date represents the expiration of the party's right to appeal." (emphasis added)).

The Court agrees with the courts in Wells Fargo and Specialized Loan that, under CPLRA 205(a), a previous action is considered terminated only at the expiration of the party's right to appeal -- i.e., 30 days after the dismissal order assuming no appeal is taken. Here, that would mean the prior action terminated not as of the 4/5/22 dismissal order, but when Cestaro's right of appeal terminated on 5/5/22. And Cestaro brought this action on October 11, 2022, less than six months later. As such, Cestaro's defamation claims are timely.

**Conclusion**

For the foregoing reasons, the Court grants defendants' motion to dismiss with respect to counts three through ten of Cestaro's complaint, but denies it with respect to Cestaro's defamation claims (Counts I and II).

SO ORDERED.

New York, NY
April 19, 2023

JED S. RAKOFF, U.S.D.J.